**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kelvin Treavaughn DAVIS,**
**Defendant–Appellant.**

**No. 89–6194.**

United States Court of Appeals,
Tenth Circuit.

Aug. 22, 1990.

Timothy D. Leonard, U.S. Atty., and James F. Robinson, Asst. U.S. Atty., Oklahoma City, Okl., on the brief, for plaintiff-appellee.

Joseph Strealy of Schnetzler and Strealy, Oklahoma City, Okl., on the briefs, for defendant-appellant.

Before ANDERSON, Circuit Judge, BRORBY, Circuit Judge, and PARKER, District Judge.[*]

PARKER, District Judge.

The appellant, Kelvin Treavaughn Davis (Davis), and four co-defendants were indicted · for conspiracy to distribute cocaine base; possession with intent to distribute cocaine; opening or maintaining premises for the purpose of distributing cocaine base; and unlawful purchase and possession of firearms. The District Court accepted Davis' guilty plea to a superseding information charging him with maintaining a place in the Western District of Oklahoma for the purpose of distributing cocaine base and aiding and abetting in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2. Because of the amount of cocaine involved in the offense, the Presentence Report contained a recommendation for an upward departure from the guideline sentencing range (15 to 21 months) associated with the offense to which Davis pleaded, because of the amount of cocaine involved in the offense. Davis objected to the recommended upward departure but the district court overruled the objection and sentenced Davis to a term of thirty-six months.

Davis claims the court erred (1) in considering the quantity of drugs involved, (2) in basing the quantity of drugs on the statements of appellant's co-defendants, and (3) in failing to explain the extent of departure above the sentencing guideline range.

The superseding information specifically charged Davis with maintaining premises for the distribution of "approximately 20 grams of a mixture or substance which contained a detectable amount of cocaine base...." At the time Davis entered his guilty plea, the government stipulated that ten ounces of cocaine powder had been present at the premises. However, Davis and each of his two co-defendants later revealed to probation officers that the members of the group had brought a significantly larger amount of cocaine from Los Angeles to Oklahoma. Davis himself told a probation officer that he estimated that between three and four kilograms (approximately 105 to 140 ounces) of cocaine were sold by the group; one co-defendant reported twenty-five ounces; another co-defendant disclosed forty-one ounces. Davis' plea agreement specified that nothing Davis told the government would be used against him. The sentencing judge made a factual finding that thirty-six ounces were involved, an amount within the range mentioned by the co-defendants and only a small fraction of the quantity disclosed by Davis himself.

18 U.S.C. § 3742(e) provides the standard for review of sentences imposed under United States Sentencing Commission Guidelines as follows: "The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." When the question is the application of a guideline to undisputed facts, there is a sliding-scale standard of review approaching *de novo* review. *United States v. Roberts,* 898 F.2d 1465, 1469 (10th Cir.1990). This case presents an issue of law—application of the sentencing guidelines—and not a question of the trial judge's factual findings underlying the application of the guidelines. The sentence must therefore be reviewed for errors of law under a *de novo* standard.

I.

■ Appellant first argues that it was error for the district court to consider the amount of drugs involved in the offense. U.S.S.G. § 2D1.8, entitled "Renting or Managing a Drug Establishment," sets 16

---

* The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

as the base level for the offense. This section of the Guidelines does not specifically mention quantity of drugs as a relevant factor in determining the offense level.

Davis maintains that the absence of any mention under U.S.S.G. § 2D1.8 of amount of drugs reflects the Sentencing Commission's deliberate rejection of amount as a factor to be considered in regard to sentencing on this offense. He fails, however, to cite any authority for this assertion. To the contrary, *United States v. Ryan,* 866 F.2d 604 (3rd Cir.1989), provides a detailed explanation of why factors not explicitly mentioned in the guidelines may serve as reasons for departure, specifically relying on 18 U.S.C. § 3553(b), which, in part, states:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(c) provides that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence."

At the time of Davis' sentencing, after making the factual finding that thirty-six ounces of cocaine base had been involved in the offense, the judge stated that:

> ... when we're talking about a group of people coming from California to Oklahoma City, setting up dope houses with large quantities of the most serious type of drug, and juveniles are involved and weapons are involved, it's just the kind of powder keg of the potential problem that America is so aware of now.

> \*   \*   \*   \*   \*   \*

I will make a finding that the sentence I am imposing, that I have considered the nature and circumstances of the offense and the history and characteristics of the Defendant.

> \*   \*   \*   \*   \*   \*

> Based on the amount of drugs involved, and all of the other considerations, the Court finds that a departure is justified upward. And that the guidelines don't adequately reflect the seriousness of the offense and all of the other considerations.

Tr. at 20–21 (transcript of May 23, 1989, sentencing hearing).

Hence, the district court judge complied with 18 U.S.C. § 3553(b) and (c) insofar as they require an explanation of the reason for an upward departure.

The Sentencing Commission's policy statement regarding grounds for departure provides that departures may be appropriate when the Guidelines are silent on relevant factors:

> [T]he court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines ... if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.... Also, a factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing. U.S.S.G. § 5K2.0, p.s.

Several courts have held that large quantities of drugs warranted upward departures for similar offenses. *See, e.g., United States v. Correa–Vargas,* 860 F.2d 35 (2d Cir.1988) (regarding U.S.S.G. § 2D1.6—"Use of Communication Facility in Committing Drug Offense"); *United States v. Ryan,* 866 F.2d 604 (3rd Cir.1989) (U.S.S.G. § 2D1.1—"Unlawful Manufacturing, Importing, Exporting, or Trafficking"); *United States v. Williams,* 895 F.2d 435, 437 (8th Cir.1990) (U.S.S.G. § 2D1.6); *United States v. Bennett,* 900 F.2d 204, 206 (9th Cir.1990) (U.S.S.G. § 2D1.6); *United States v. Crawford,* 883 F.2d 963, 964 (11th Cir. 1989) (U.S.S.G. § 2D2.1—"Unlawful Possession").

In the face of the Commission's instructions that a factor may be considered and used to justify a departure even though it is not listed under the relevant guideline section, and the cases holding that quantity of drugs is a valid factor on which to base an upward departure, Davis' argument is unconvincing.

## II.

Davis' second argument, that the district court erred in using co-defendants' information about the amount of cocaine involved, appears to be advanced along two separate lines; first, that the sentencing judge, notwithstanding his disclaimer, did in fact rely on Davis' own statements regarding drug quantity in violation of the plea agreement, and second, that in using the co-defendants' statements against Davis, the court violated Davis' right to confrontation of witnesses.

■ The first part of the argument incorrectly relies on *United States v. Shorteeth*, 887 F.2d 253 (10th Cir.1989). In that case the district court improperly used information provided by the defendant, herself, during debriefings by government agents in determining the guideline sentencing range. In her plea agreement the defendant had agreed to cooperate with and provide information to federal agents in the investigation of other individuals. In return, the government agreed not to prosecute the defendant on the basis of information she revealed. The plea agreement did not address, explicitly, whether the information revealed by defendant in cooperation with the government could be used for sentencing purposes. *Id.* at 256. In *Shorteeth* this court ruled that U.S.S.G. § 1B1.8 precludes use in sentencing of information disclosed by the defendant pursuant to the defendant's plea agreement unless the plea agreement specifically mentions the court's ability to consider the information during sentencing. *Id.* at 256.

The facts of this case closely resemble the facts in *United States v. Boyd*, 901 F.2d 842 (10th Cir.1990), and not the situation in *Shorteeth*. In *Boyd* this court upheld an upward departure in sentencing which was based on statements made by the co-defendants revealing larger quantities of cocaine than had been known to the government at the time of the indictment. *Id.* at 845.

In the present case the sentencing judge stated, "I will not use your client's testimony against him." Tr. at 12 (transcript of May 23, 1989, sentencing hearing). The trial judge instead used statements of Davis' co-defendants regarding drug quantity, stating at the sentencing hearing that "I see no prohibition or inhibition for the Court using statements of others against the Defendant." Tr. at 11 (transcript of May 23, 1989, sentencing hearing). There is no indication that the co-defendants' statements were elicited as a result of Davis' plea agreement with the government, and Davis provided no evidence that, had he refused to cooperate, his co-defendants likewise would not have offered the information about the correct quantity of drugs involved. While there may be some concern that the use of the co-defendants' information against Davis may lead future defendants to refuse to cooperate in investigations, it is clear that the sentencing judge did not use Davis' own information against him. The plea agreement was not violated by the use of statements of Davis' co-defendants.

■ Relying on *United States v. Castellanos*, 882 F.2d 474 (11th Cir.1989), Davis also contends that use of statements made by witnesses he was unable to cross-examine deprived him of his right to confrontation. In that case the sentencing judge was reversed for using co-conspirators' testimony from a previous trial to establish that the amount of drugs involved was greater than had been known to the government. 882 F.2d at 477. Finding that the *Castellanos* ruling did not adequately recognize the differences between the guilt phase and the sentencing phase of a criminal proceeding, this Circuit considered and specifically rejected the *Castellanos* rule. *United States v. Beaulieu*,

893 F.2d 1177, 1180 (10th Cir.1990).[1]

In *Beaulieu* this court upheld the sentencing judge's use of testimony of the defendant's two brothers given at their previous trial for involvement in the same drug conspiracy. This court ruled that in resolving any disputed factor important to the sentencing determination in accordance with U.S.S.G. § 6A1.3, p.s., the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

Although there were discrepancies between the two co-defendants' estimates of the total amount of cocaine involved, it was generally agreed that the quantity of cocaine was significantly greater than the ten ounces originally known to the government. There is no reason to doubt the veracity of the co-defendants on this point, and their statements therefore meet the test of "minimum indicia of reliability" required in *United States v. Jones*, 640 F.2d 284, 286 (10th Cir.1981). A non-capital defendant does not have an absolute right to confront witnesses whose information is made available to the court at the sentencing stage. *United States v. Sunrhodes*, 831 F.2d 1537 (10th Cir.1987). The court in making a factual finding that thirty-six, and not forty-one or more, ounces of cocaine had been involved, selected an amount well below the quantities disclosed by Davis and one of his co-defendants. Davis did not object to the accuracy of the amount found by the judge; he objected only to the use of the information against him.

Moreover, the sentencing judge afforded Davis the opportunity to present evidence on the issue of the quantity of drugs involved and Davis, through his attorney, declined to do so:

> Court: ... do we need to take evidence on that to establish the amount involved?
>
> Mr. Strealy: I don't believe so, Your Honor. I think—I have no reason to

disagree or have any knowledge of what Mr. Sardin [a co-defendant] said except what the presentence report indicates.

Tr. at 12 (transcript of May 23, 1989 sentencing hearing).

## III.

■ Finally, in the last sentence before the conclusion of his brief, Davis raises the claim that the degree of the sentencing judge's departure from the sentencing guidelines was not warranted by the facts of his case. Although the argument is not developed in the brief and no authorities are cited, this Circuit has in the recent past issued a number of rulings on the requirements to which sentencing judges must adhere in order to depart upward from the guideline range for an offense. *United States v. Harris*, 907 F.2d 121, 124 (10th Cir.1990); *United States v. Gardner*, 905 F.2d 1432, 1438 (10th Cir.1990); *United States v. White*, 893 F.2d 276 (10th Cir. 1990); *United States v. Smith*, 888 F.2d 720, (10th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990).

*White* set forth a three-part test for review of upward departures from the guideline sentencing range. First, it is necessary to determine, using a *de novo* standard, whether the circumstances cited by the sentencing judge warrant departure from the guidelines and whether those circumstances were not adequately considered by the Sentencing Commission in formulating the guidelines. 893 F.2d at 278. Second, the reviewing court must determine whether the findings underlying the sentencing court's decision were clearly erroneous. *See* 18 U.S.C. § 3742(e). Third, the reviewing court must determine whether the degree of departure from the guidelines was reasonable.

The sentencing judge clearly articulated the reasons for departure and we conclude that these reasons warranted an upward

---

**1.** We recognize that *Beaulieu*, announced on January 10, 1990, was decided after Davis made this argument in his brief in this appeal which was filed October 30, 1989.

departure. Therefore, the first part of the *White* test is satisfied.

Upon review of the record, we are unable to find that the district court was clearly in error in its factual findings underlying the sentencing decision. Thus, the second prong of the test is met.

Having determined that the departure itself was warranted, we must next decide whether the *degree* of the departure was reasonable. *Gardner,* 905 F.2d at 1438. To do so we must "consider the district court's proffered justifications as well as … the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities." *White,* 893 F.2d at 278. It is not enough simply to state the reasons for a departure from the guidelines; the reasons for the "particular sentence" imposed must also be set forth. *Gardner,* 905 F.2d at 1441 (citing *Smith,* 888 F.2d 720, 724). Thus, the district court must explain not only its reasons for a departure, but also its reasons for the degree of the departure. *Harris,* 907 F.2d at 120. *See, also, United States v. Allen,* 898 F.2d 203 (D.C.Cir.1990); *United States v. Cervantes,* 878 F.2d 50, 54 (2d Cir.1989); *United States v. Anderson,* 886 F.2d 215, 216 (8th Cir.1989) (per curiam). This may require "an extension of or extrapolation from other guideline levels or principles, or use of an analogy to other closely related conduct or circumstances that are addressed by the guidelines." *Gardner,* 905 F.2d at 1445. When a sentencing judge does not provide the reason for the degree of departure, the aim of the Sentencing Guidelines to promote uniformity and proportionality in sentencing is undermined. *Harris,* 907 F.2d at 121.

In the instant case there was no comparison to higher guideline categories and no explanation of how the sentence of thirty-six months was chosen. The reasoning behind a court's departure decision should be clearly stated. "[W]e will not speculate as to what those considerations may have been." *White,* 893 F.2d at 278. We therefore will retain appellate jurisdiction and ask the district court to explain its reasons for the extent of departure above the guideline range.

The decision is AFFIRMED as to the district court's consideration of the quantity of drugs involved in the offense and as to its basing the quantity of drugs on the statements of appellant's co-defendants. The clerk of this court is instructed to transmit this opinion to the district court. We retain appellate jurisdiction.