UNITED STATES of America, Plaintiff–Appellee,

v.

Alejandro CASTELLANOS, Defendant–Appellant.

No. 88–3535.

United States Court of Appeals, Eleventh Circuit.

Aug. 17, 1989.

Mark A. Pizzo, Asst. Federal Public Defender, Tampa, Fla., for defendant-appellant.

Mark Jackowski, Omer G. Poirier, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee.

---

Before TJOFLAT and VANCE, Circuit Judges, and PITTMAN *, Senior District Judge.

TJOFLAT, Circuit Judge:

### I.

On January 5, 1988, a federal grand jury handed down a two-count indictment against appellant Alejandro Castellanos and four of his associates, charging them with possession of and conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982).[1] On March 10, 1988, appellant reached a plea agreement with the Government pursuant to which he pled guilty to count two of his indictment. Appellant's plea agreement stipulated the following facts:

> On December 3, 1987, pursuant to discussion between co-conspirators and co-defendants Allessandro Ippolito, Marcia Usan, Alejandro Castellanos, Danny Rio and Carlos Carrasco, defendant Alejandro Castellanos and Marcia Usan traveled from Miami to Tampa in an automobile carrying approximately nine ounces of cocaine. Surveillance agents observed Allessandro Ippolito meet Castellanos and Usan at a restaurant in Tampa. A surveillance agent saw Usan remove a white package from the trunk of defendant's automobile and place it in the trunk of Ippolito's automobile. Castellanos was present during this exchange between Ippolito and Usan. Shortly

thereafter, Ippolito delivered the cocaine to an undercover Drug Enforcement Agent. Castellanos, Usan, and Ippolito were then arrested. A later chemical analysis of the substance provided [sic] positive for cocaine.

On April 10, 1989, appellant went before the district court for sentencing. Since appellant's offense occurred after November 1, 1987, his sentence was controlled by the sentencing guidelines promulgated by the United States Sentencing Commission. *See United States v. Burgess*, 858 F.2d 1512, 1514 (11th Cir.1988).

In sentencing appellant, the district court properly looked to Sentencing Guidelines § 2D1.1 (Oct.1987) ("Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)"). That guideline provides that the base offense level should vary in proportion to the type and quantity of narcotics involved in the offense. *See id.* § 2D1.1(a)(3). Relying on the information provided in the presentence report prepared by the United States Probation Service, the district court determined that appellant's offense involved over five kilograms of cocaine. Accordingly, the district court determined appellant's base offense level to be 32. *See id.* § 2D1.1 drug quantity table. After factoring in other adjustments and appellant's criminal history, the district court concluded that the guideline sentencing range for appellant's offense was a thirty-seven to forty-six month term

---

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. The indictment provided as follows:
   COUNT ONE
   From an unknown date until on or about December 3, 1987, in the Middle District of Florida and elsewhere, the defendants
   ALLESSANDRO IPPOLITO,
   ALEJANDRO CASTELLANOS,
   MARCIA USAN,
   DANNY RIO and
   CARLOS A. CARRASCO
   unlawfully, willfully and knowingly did combine, conspire, confederate and agree together and with each other and with persons known and unknown to the Grand Jury to possess with intent to distribute a quantity of cocaine in excess of 500 (five-hundred) grams, a

Schedule II, narcotic drug controlled substance.
All in violation of Title 21, United States Code, Section 841(a)(1) and 846.
COUNT TWO
On or about December 3, 1987, in the Middle District of Florida and elsewhere, the defendants,
ALLESSANDRO IPPOLITO,
ALEJANDRO CASTELLANOS, and
MARCIA USAN,
did knowingly and intentionally possess with intent to distribute a quantity of cocaine, a Schedule II narcotic drug controlled substance.
All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

of incarceration, *see id.* Ch. 5 Part A (Offense Level 21, Criminal History Category I), and sentenced appellant to a thirty-seven month term of incarceration to be followed by a three-year term of supervised release.

Appellant now challenges his sentence, arguing that the district court improperly found that his offense involved over five kilograms of cocaine. We agree.

## II.

In order to apply the guidelines, the district court first must establish the facts and circumstances of the defendant's offense conduct. The court performs this function by means of an adversarial fact-finding process, similar to a civil bench trial. The presentence report prepared by a United States probation officer initiates this process.

In preparing the presentence report, the probation officer's goal is "to provide the court with solid, well researched, verifiable information that will aid the court in selecting the proper guideline range." Division of Probation, Administrative Office of the United States Courts, Presentence Investigation Reports Under the Sentencing Reform Act of 1984, at 2 (1987) [hereinafter "Probation Officer's Manual"]. In the report, the probation officer begins by setting out the details of the defendant's offense conduct and his criminal history. The officer then applies the guidelines to these facts and states the sentencing options available to the court under the guidelines. *See generally id.*[2]

Once the report is prepared, counsel for both the prosecution and the defense have the opportunity to review it and make objections to any guideline applications that they believe to be erroneous. *See* Committee on the Administration of the Probation System, Judicial Conference of the United States, Model Local Rule for Guideline Sentencing (1987). The probation officer considers these objections, makes any amendments to the report that may be required, and then sets forth in an addendum to the report the objections that remain unresolved. *See* Probation Officer's Manual at 52. Prior to the sentencing hearing, the report and addendum, together with the probation officer's sentencing recommendation, are submitted to the court. *Id.* The presentence report and addendum thus serve the same purpose as a pretrial stipulation in a civil bench trial, the report establishing the factual and legal backdrop for the sentencing hearing and the addendum enumerating the disputed factual and legal issues that the court must resolve.

The final step in the guideline sentencing process is the sentencing hearing. At this hearing, the court engages in a colloquy with both the prosecution and the defense concerning how the guidelines should be applied to the facts of the particular case before the court. In so doing, the court must resolve all factual and legal disputes raised in the addendum to the presentence report—as well as any other objections raised by the parties during the course of the hearing. The court performs this task by making findings of fact and conclusions of law.

In this case, appellant objected to the presentence report's finding that his offense involved over five kilograms of cocaine. The amount of narcotics involved in appellant's offense therefore became a disputed fact for the district court to resolve at the sentencing hearing. The district court did so by relying on testimony presented at the trial of Marcia Usan, one of appellant's co-conspirators. This reliance on testimony adduced at the trial of another was fundamental error.

We have held that a sentencing judge may rely on the evidence presented at the defendant's *own* trial in resolving disputed facts for sentencing purposes. *See United*

---

**2.** The Probation Officer's Manual also suggests that the presentence report should discuss other information that might be relevant for sentencing purposes, such as the defendant's family and community ties, mental and physical health, level of education, and employment status; any fines or provision for restitution that may or must be imposed; and any factors that warrant departure from the guideline sentencing range. The report should also evaluate the impact of any plea agreement on the sentencing alternatives prescribed by the guidelines.

*States v. Wise,* 881 F.2d 970, (11th Cir. 1989). This procedure is entirely proper: such a defendant has had the opportunity to cross-examine the Government's witnesses, make objections to evidence, and put on his own case; he therefore cannot object to the court considering the trial record in fashioning his sentence. When the sentencing judge relies on evidence adduced at the trial of another, however, no such procedural guarantees are present. The evidence presented at a trial of Marcia Usan therefore cannot be used to fashion appellant's sentence anymore than could testimony adduced at a narcotics trial in another jurisdiction.[3] Thus, the only evidence before the court regarding the quantity of cocaine possessed by appellant was appellant's stipulation in his plea agreement that his offense involved over nine ounces (approximately 230 grams) of cocaine. We therefore conclude that the district court erred in concluding that appellant's offense involved over five kilograms of cocaine.

### III.

Appellant's sentence is vacated. The case is remanded to the district court for an evidentiary hearing to resolve the facts disputed by appellant and for resentencing in light of the facts that the district court finds at the hearing.[4]

VACATED AND REMANDED.

---

3. We note that appellant testified on behalf of the Government at the trial of Usan. This, of course, does not allow the general admission of the evidence adduced at Usan's trial. Appellant had no opportunity to cross-examine witnesses, make objections to evidence, put on evidence in his own behalf—or even to object to the questions that he was asked to answer.

4. In holding this evidentiary hearing, we note that the Government can introduce appellant's testimony at the trial of Marcia Usan to the extent that such testimony may constitute an admission on his part. *Cf.* Fed.R.Evid. 801(d)(2)(A). In reviewing this testimony in the course of deciding Usan's appeal, we could discern as a matter of law no admission by appellant that his offense involved over five kilograms of cocaine; hence, our remand.